(52 Misc. Rep. 511)

### ROGERS et al. v. WILKENFELD.

(Supreme Court, Appellate Term. February 4, 1907.)

1. DEPOSITARIES—VENDOR AND PURCHASER—DEPOSIT TO SECURE COMPLIANCE WITH TENEMENT HOUSE ORDER—RIGHT OF RECOVERY.

Vendors deposited $300 with their attorney, it being understood that, if they should not comply with a tenement house violation charged against the premises before July 21, 1905, the purchasers might do so, and the deposit, "or so much thereof as is necessary, be applied towards the cost." Neither party complied with the violation, but after July 21st the attorney asked the purchasers "not to do anything," stating that he

was going to fix the matter up by the payment of the money, or that his clients would comply with the violation. *Held,* that the purchasers could not recover any portion of the deposit without showing compliance with the violation, and that their recovery would be limited to the reasonable cost of doing the work.

2. VENDOR AND PURCHASER—TITLE OF VENDOR—CURING DEFECTS.

Where a tenement house order requiring a yard to be "properly concreted" was afterwards modified, so that only a strip 3 feet wide need be concreted, and the violation was removed, it would be presumed that the yard was properly concreted, and no liability rested upon vendors to concrete it, though before the modification of the order they sold the premises and agreed with the purchaser to comply with the order.

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Gustavus A. Rogers and another against Joseph Wilkenfeld. From a judgment for plaintiffs, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, BLANCHARD, and DAYTON, JJ.

Benjamin Reass (Joseph Wilkenfeld, of counsel), for appellant.
Saul E. Rogers, for respondents.

PER CURIAM. This action was brought for money had and received, and the answer was a general denial; the pleadings being oral. The facts are practically undisputed and are substantially as follows: Parties named Fensterheim and Hirshfeld entered into a written contract of sale, whereby as vendors they agreed to convey certain premises to Aaron Ratkowsky and Harris Rogers as vendees; the plaintiff Rogers having subsequently acquired the interest of Harris Rogers in said contract. The premises were to be conveyed free from all tenement house violations to the time of the closing of title. The purchase price was $27,750. At the day title was to be given by said vendors it appeared that there was a tenement house violation charged against the property, which was a requirement that there should be provided "a cast-iron drain for rear area, provide cast-iron drain for yard, and properly concrete same to a slope not less than ¼ inch per foot, file owner's name." The plaintiff Rogers, who was present as attorney for the vendees at the closing of title, in detailing what then occurred at this time relative to the disposition of this violation, says:

"I told him [the defendant herein, who was attorney for the vendors] he could either have the title adjourned, or else some other provision be made for complying with these violations. After some further talk among Mr. Wilkenfeld, his clients, and myself, Mr. Wilkenfeld said: 'How much do you want to comply with these violations yourself?' I said: 'What do your clients estimate that they will be worth?' He said: 'Between $75 and $100.' I said: 'Mr. Wilkenfeld, I do not think it can be done for $75 or $100 This is a matter of putting drain pipes through the sewer, etc. So far as I am concerned, I don't care whether your clients can do it for $5, as long as they do it. We don't want any money from them, but security for the contract.'"

After some further conversation on the subject the sum of $300 was taken from the purchase price paid by the vendees and deposited with this defendant, who thereupon signed the following paper:

"This is to certify that I hold the sum of $300 deposited with me for the purpose of permitting Messrs. Fensterheim and Hirshfeld to comply and remove violation O. B. V. 48015/05 on letter dated June 21, 1905, from the tenement house department to Gustavus A. Rogers. If same is not complied with on or before July 20, 1905, Messrs. Rogers and Ratkowsky are authorized to comply with said violation, and the sum of $300, or so much thereof as is necessary, to be applied towards the costs of complying with same.

"Dated New York, June 26, 1906."

As to the letter of June 21, 1905, it seems clear that by the terms of this writing it was the intention of the parties that the vendors should comply with the requirements of the order of the tenement house department, and that they had until July 20, 1905, in which to do so, and that, if not complied with by that time, the vendees, upon complying with such requirements, would be entitled to so much of the $300 deposited with the defendant as would compensate them for the cost of such work. That all parties contemplated that the work ordered by the tenement house department should actually be done is perfectly clear and practically undisputed. It is conceded by the plaintiffs that the work was never performed by them or at their expense. Conscious, therefore, that the plaintiffs' claim could have no basis under the writing aforesaid, as their right to any portion of the $300 deposited with the defendant must rest upon their having incurred the cost of complying with the violation charged against the premises, the plaintiffs' attorney states that he makes no claim for a recovery herein from the defendant on the writing of June 26, 1905, but bases their claim upon what he terms "a novation of contract and a new agreement, which superseded the instrument under which the deposit was made." The terms of this "new agreement" is set forth in the testimony of one of the plaintiffs as follows:

"I wish to say that Mr. Wilkenfeld, both before and after the institution of this suit, requested me not to do anything, that he was going to fix the matter up by payment of the money, or that his clients go in on the premises and do it themselves, and asked me not to have the work done."

When this conversation occurred or such statement was made by the defendant does not clearly appear, and is of no consequence, for it does not change the situation in the least. The interpretation of a contract, written or oral, is to be determined by the relation of the parties and the surrounding circumstances, and the language used is to be taken in the sense which it is reasonable to presume was intended. The language used by the defendant, as attributed to him, contained no express or implied promise to pay the full sum of $300 to the plaintiffs. It is in substance a mere reiteration of the terms of the written instrument by which the defendant held the fund. In other words, the matter would be "fixed up." The vendors would either "go in and do the work," or pay a reasonable sum for its cost, if done by the vendees. There had been a difference of opinion as to the actual sum necessary to comply with the order of the department. That difference of opinion still existed, and it is going too far to say that the defendant should be bound to pay over the entire fund held by him because, in a conversation had with one of the plaintiffs, at a time which cannot be more definitely fixed by the narrator than as being "both before

and after the institution of this suit," the defendant used the language attributed to him, and that by the use of such expressions the defendant intended, or did thereby promise and agree, to pay said sum in full to the plaintiffs, disregarding the express terms of the written instrument under which he held it, and without regard to whether the work was done or not.

Neither does it appear that the plaintiffs acted upon or were damaged by such statements in any way. They were not thereby prevented from doing the work, their right to proceed and comply with the department order was complete on July 20, 1905, at which time the vendors had failed to perform the work, and their right to compensation from the fund for the cost of the work, if done by them, was undisputed. It does not appear that from the date of the written instrument of June 26, 1905, to the day of trial in November, 1906, the plaintiffs made the slightest attempt to perform the work, or requested the defendant or the vendors to cause it to be done. Moreover, when we consider that the defendant is not shown to have any authority from the vendors to alter the conditions under which he held the fund, as there is no evidence that he acted for the vendors, or had authority to act for them, at any time other than at the closing of title, it will be seen that the claim of the plaintiffs to the whole fund in the hands of the defendant, upon the theory that their right thereto is given them upon "the promise and agreement to pay over if the plaintiffs would refrain from doing the work specified in the violation," is fallacious, untenable, and not sustained by a reasonable construction of the language used by the defendant in the so-called "new agreement," or by the facts in the case. The plaintiff would not, therefore, recover either of the defendant or the vendors without showing that they had performed the work required by the violation charged against the premises, and such recovery would be limited to the reasonable cost of doing the work. The recovery in this case was based wholly upon estimates of what the work would cost, and it was not shown that the plaintiffs had actually expended or obligated themselves to pay one dollar therefor.

Another sufficient reason for the reversal of the judgment herein is this: It will be remembered that the work to be done on the premises, in order to comply with the violation charged, was to "provide cast-iron drain for rear area, provide cast-iron drain for yard, and properly concrete same to a slope not less than $\frac{1}{4}$ inch per foot." In the summer of 1905, and long prior to the institution of this action, this order of the tenement house department was modified, by permitting the placing of "a saddle at the head of the cellar stairs leading to the rear area and by concreting the yard to a distance of three feet from the rear wall." This modification seems to have been based upon a claim that "the yard is properly sloped and proper drainage is effected, and that the rear area is not sufficient size required to drain"; and later, in August, 1905, after inspection and a report that the order as modified had been complied with, the violation was removed by the tenement house department. If we assume that the vendors were required to strictly and exactly perform the work specified in the order afore-

said, they would only be liable for failure to provide "cast-iron drain for rear area and cast-iron drain for yard." Section 93, C. 4, Tit. 1, Tenement House Act (Laws 1901, p. 910, c. 334), requires that:

".\reas and yards shall be graded and drained and when required by the department charged with the enforcement of this act shall be properly concreted."

The order aforesaid followed the language of the act, and required that the premises in question should be "properly concreted," and by their modification of that order and a subsequent removal of the violation the presumption is that the yard was properly concreted, and no liability for failure to concrete the yard rested on the vendors; and the testimony of one of the plaintiffs' witnesses that it is "customary to concrete the whole yard" is not sufficient to overcome that presumption. The expense of providing the drain was shown to be $30 only. It would therefore be unjust and inequitable to permit the plaintiffs to recover the sum of $300 for work which concededly cost only $30 to perform. Under the facts in this case as presented by the record, no cause of action is shown to exist against the defendant herein, and the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.